UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAYMOND HAYWOOD,                     Case No. 1:17-cv-398
     Plaintiff,                                            Cole, J.
                                                       Litkovitz, M.J.
    vs.

NICHOLAS GIFFORD,                    **REPORT**
     Defendant.                                      **AND RECOMMENDATION**

Plaintiff Daymond Haywood, a former inmate at the Southern Ohio Correctional Facility ("SOCF"), filed this pro se prisoner civil rights action under 42 U.S.C. § 1983 alleging that on February 20, 2017, defendant SOCF Corrections Officer Nicholas Gifford ("Gifford") used excessive force against him in violation of his Eighth Amendment rights. (Doc. 10).[1] This matter is before the Court on defendant's amended motion for summary judgment (Doc. 46),[2] plaintiff's response in opposition (Doc. 49), plaintiff's motion for summary judgment (Doc. 51), and defendant's response memorandum (Doc. 52).

**I. Factual Background**

In support of his motion for summary judgment, Gifford has submitted his own declaration (Doc. 44-4, Exh. D), the Use of Force Report ("UOF Report") (Doc. 44-2, Exh. B),[3] and a video recording (Doc. 44-1, Exh. A) that captures the entire incident that occurred on February 20, 2017.

---

[1] Plaintiff's remaining claims were dismissed on sua sponte screening of the complaint under 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). (Docs. 11, 15).

[2] The Court notes that defendant filed a motion for summary judgment (Doc. 44) and four days later filed an amended motion for summary judgment (Doc. 46) without providing a reason why the motion was amended. Defendant's initial motion for summary judgment is denied as moot and this Report and Recommendation is before the Court on defendant's amended motion for summary judgment (Doc. 46).

[3] The statements by plaintiff, defendant, and other individuals that are reflected in the UOF Report, which have been offered as evidence on summary judgment, are not sworn statements. The Court therefore has not considered these statements in determining whether there is a genuine factual dispute in the case.

On that day, Gifford was assigned to the K2 housing unit of SOCF where plaintiff was housed. (Doc. 44-4, Exh. D Gifford Decl., ¶ 4). Gifford selected plaintiff's cell as "one of the random required daily searches for contraband[.]" (*Id*. at ¶ 5). Plaintiff was in the shower while Gifford was conducting the search of plaintiff's cell. (*Id*.). Gifford "found several items of contraband including food trays and lids, empty milk cartons and a trash bag" inside plaintiff's cell. (*Id*. at ¶ 6). Gifford took these items out of plaintiff's cell and placed them on a cart in the hallway. (*Id*. at ¶ 11; Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:45:30-7:45:36). After returning from the shower, plaintiff was placed in a nearby empty cell while Gifford finished searching plaintiff's cell. (Doc. 44-4, Exh. D Gifford Decl., ¶ 9). After removing the contraband from plaintiff's cell, Gifford "attempted to escort" plaintiff back to his assigned cell. (*Id*. at ¶¶ 12-13; Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:45:56-7:45:59).

Plaintiff was handcuffed with his hands behind his back during the escort. (Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:45:56-7:46:02). Gifford states that during the escort, plaintiff made a "verbal threat." (Doc. 44-4, Exh. D Gifford Decl., ¶ 13). Plaintiff also "kicked a food tray that was on the floor[.]" (*Id*.; Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:45:58-7:46:00). Plaintiff continued walking past his assigned cell after kicking the food tray. (*Id*. at ¶¶ 13-14; Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:46:00-7:46:02). Gifford "attempted to escort [plaintiff] into his assigned cell by placing [his] hands on [plaintiff's] arms." (Doc. 44-4, Exh. D Gifford Decl., ¶ 14). Plaintiff turned toward Gifford and "began actively resisting with physical force." (*Id*.; Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:46:02-7:46:08). A struggle ensued between plaintiff and Gifford. (*Id*.). Gifford eventually broke contact with plaintiff because he was unable to obtain plaintiff's compliance. (*Id*. at ¶ 15; Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:46:06-7:46:08).

Gifford deployed a burst of oleoresin capsicum ("OC") spray to plaintiff's face. (*Id.*; Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:46:08-7:46:10). Plaintiff, still handcuffed, turned around with his back facing Gifford. (*Id.*; Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:46:12-7:46:17). Gifford "again attempted to place [plaintiff] in his cell using an arm escort technique." (*Id.* at ¶ 15). Plaintiff, however, placed "one hand and both knees on the cell doorway, prohibiting [Gifford] from placing [plaintiff] in his assigned cell." (*Id.* at ¶ 16; Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:46:19-7:46:29). Gifford continued to "use verbal commands along with escort techniques to gain [plaintiff's] compliance." (*Id.* at ¶ 17). Gifford pushed plaintiff against the bars that lined the hallway. (Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:46:30-7:46:53). Plaintiff fell to the floor. (*Id.*). Gifford again pushed plaintiff into the hallway bars but was unable to gain plaintiff's compliance. (*Id.*). Plaintiff turned his back to Gifford and grabbed the hallway bars. (*Id.*; Doc. 44-4, Exh. D Gifford Decl., ¶ 17). Gifford deployed a second burst of OC spray onto plaintiff in an attempt to gain plaintiff's compliance. (Doc. 44-4, Exh. D Gifford Decl., ¶ 18). Plaintiff kicked items on the ground and continued to hold onto the hallway bars. (Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:46:55-7:47:14). Three additional corrections officers ran down the hallway and assisted Gifford. (*Id.* at 7:46:55-7:47:20). Plaintiff was eventually "placed into his cell after another corrections officer pried [plaintiff's] hands from the hallway bars and escorted [plaintiff] in his assigned cell." (*Id.* at ¶ 19).

The UOF Report includes a Medical Exam Report which indicates that plaintiff was evaluated by a nurse following the use of force incident. (Doc. 44-2, Exh. B at PAGEID 303). The nurse made objective physical findings that plaintiff was alert and oriented; his respirations were even and unlabored; he had visible redness to his face and neck area related to OC contamination; and he had open abrasions on the lateral sides of his left wrist. (*Id.*).

Plaintiff has not submitted any evidence in response to Gifford's motion for summary judgment. As best the Court can discern, it appears that plaintiff relies on the sworn allegations in his verified complaint.[4] Plaintiff alleges that he was "assaulted multiple times" by Gifford on February 20, 2017. (Doc. 10 at PAGEID 77). Specifically, plaintiff alleges that Gifford was "shaking [his] cell down" when he was being escorted back from the shower. (*Id*.). Plaintiff states that Gifford balled up paper and flushed the toilet multiple times after Gifford said, "so you wanna write up my officers[?]" (*Id*.). Plaintiff further alleges that Gifford "said racial comments about [his] property" and was then "sprayed with Oleoresin capsirum." (*Id*.). Plaintiff states that Gifford "assaulted" plaintiff with his bare hands, tried to "slam" him, and put him "in a choke hold" causing the handcuffs to "ripe (sic) through [his] flesh around [his] wrists until his right wrist flared up and swolled (sic) up, as well as [his] lower fore arm." (*Id*.). Plaintiff alleges he went limp when Gifford placed him in a choke hold. (*Id*.). Plaintiff alleges he was sprayed with "O/C again" after he stood up. (*Id*.).

Defendant deposed plaintiff on September 30, 2020. (Doc. 40-1; *see also* Doc. 44-3, Exh. C). Plaintiff testified that on February 20, 2017, he observed Gifford searching the inside of plaintiff's cell after plaintiff had returned from the shower. (Doc. 40-1, Pltf. Depo. at PAGEID 163-64). Plaintiff was placed in a nearby cell while Gifford was finishing the search of plaintiff's cell. Plaintiff heard paper being ripped up and the toilet in his cell flush. (*Id*. at PAGEID 164). Plaintiff testified that he did not witness Gifford destroy his property or mail. (*Id*. at PAGEID 171). While being escorted, plaintiff kicked a tray out of anger and frustration after hearing his property being ripped up and flushed down the toilet. (*Id*. at PAGEID 164).

---

[4] Plaintiff's verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(e). *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

Plaintiff said that his "shower shoe" came off when he kicked the tray and he went beyond his cell to put his "shower shoe" back on. (*Id*. at PAGEID 209).

Plaintiff testified that he "refused to go [to his own cell] due to the fact that [he] heard [Gifford] ripping up all [of his] property." (*Id*. at PAGEID 168). Specifically, plaintiff testified: "I acted out. I refused to go in the cell. When he [Gifford] tried to put me in the cell, I refused to go and I asked for a white shirt." (*Id*. at PAGEID 174). Plaintiff testified that he wanted a "white shirt" to make sure "things was (sic) handled in the right way." (*Id*. at PAGEID 164).[5] Plaintiff acknowledged that he disobeyed Gifford's direct order to return to his cell. (*Id*. at PAGEID 174). Plaintiff testified that he "did everything that [he] could not to go in the cell." (*Id*. at PAGEID 188).

Plaintiff testified that Gifford stepped back and "immediately" and "instantly" sprayed him after he kicked the tray on the ground. (*Id*. at PAGEID 189, 197, 203). Plaintiff specified that Gifford told him to go in his cell "three times." (*Id*. at PAGEID 183). Later in the deposition, however, plaintiff recalled only "one directive order" from Gifford to go into his cell. (*Id*. at PAGEID 191). Plaintiff testified that he blacked out after Gifford sprayed him. (*Id*. at PAGEID 186). Plaintiff clarified that "blackout" meant he remembered everything but could not see anything. (*Id*. at PAGEID 186-87). Plaintiff testified, "I spazzed out where I just refused to do anything he [Gifford] told me to do. He told me to go in the cell. I refused to go in the cell. He tried to push me in the cell, force me in the cell, I refused to go, and then it turned into an assault." (*Id*. at PAGEID 187). Plaintiff testified that Gifford grabbed him by the arm trying to push plaintiff into his cell. (*Id*. at PAGEID 210). Plaintiff testified that Gifford started punching him and tried to slam him to the ground. Plaintiff stated that Gifford punched him again, and

---

[5] The Court understands the phrase "white shirt" to mean a supervisory correctional officer.

5

plaintiff landed on his feet or knees and held onto the bars. Plaintiff testified that he "was trying to get [his] shower shoe." (*Id*. at PAGEID 211). He further testified that Gifford was shaking and punching him (*Id*.); Gifford put plaintiff into a chokehold to try to pull him up from the bars; and Gifford sprayed plaintiff a second time when plaintiff did not let go of the bars. (*Id*. at PAGEID 189). Plaintiff testified that additional corrections officers grabbed plaintiff and put him in his cell. (*Id*. at PAGEID 205-06).

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed material facts by 'citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield v. Tenn.*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Where videotape evidence is submitted, courts view "the facts in the light depicted by the videotape" for purposes of ruling on a motion for summary judgment. *Id*. at 380-81. *See also Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) ("But where, as here, there is "a videotape capturing the events in question," the court must "view[] the facts in the light depicted by the videotape.") (quoting *Id*.).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston v. Montgomery Cty. Jail Med. Staff Pers*., 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc*., 375 F. App'x 482, 485 (6th Cir. 2010)).

**III. Eighth Amendment**

Plaintiff's Eighth Amendment claim is brought under 42 U.S.C. § 1983, which prohibits any person "under color of any statute, ordinance, regulation, custom, or usage, of any State"

7

from depriving a United States citizen "of any rights, privileges or immunities secured by the constitution and laws." To prevail on a § 1983 claim, plaintiff must demonstrate "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

A convicted prisoner's right to be free from the use of excessive force by prison officials is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "core judicial inquiry" whenever a prison official stands accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *see also Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)) (defendant corrections officers applied force—spraying the prisoner with pepper spray—in a "good faith effort to maintain or restore discipline, not to maliciously cause pain," where the prisoner repeatedly disobeyed the defendants' direct orders to "sit cross-legged on his bunk and face the wall.").

An Eighth Amendment claim has both an objective and subjective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). For an Eighth Amendment claim to survive the summary judgment stage, "the prisoner must satisfy *both* [the] objective and a subjective component[s]." *Brevaldo v. Muskingum Cnty. Sheriff's Off.*, No. 2:18-cv-446, 2020 WL 264352, at *5 (S.D. Ohio Jan. 17, 2020), *report and recommendation adopted*, 2020 WL 6536475 (S.D. Ohio Nov. 6, 2020)

(emphasis added) (quoting *Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1093 (6th Cir. 2019)).

The subjective component focuses on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson*, 503 U.S. at 7). *See also Wilkins*, 559 U.S. at 37. In making this inquiry, the Court should consider the need for the use of force, the relationship between that need and the type and amount of the force used, the threat reasonably perceived by the official, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 319-21. The inmate is not required to suffer a serious injury, but the extent of his injuries may be considered in determining whether the force used was wanton and unnecessary. *Wilkins*, 559 U.S. at 38-40; *Hudson*, 503 U.S. at 7.

The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Hudson*, 503 U.S. at 8). "The Eighth Amendment's 'prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, *provided that the use of force is not of a sort repugnant to the conscience of mankind.*" *Smith v. Bigham*, No. 1:17-cv-128, 2018 WL 2100518, at *6 (S.D. Ohio May 7, 2018), *report and recommendation adopted*, 2018 WL 2735648 (S.D. Ohio June 7, 2018) (emphasis in original) (quoting *Wilkins*, 559 U.S. at 37-38). But "the *de minimis* inquiry is based on the *nature of the force* rather than the extent of the injury." *Montgomery v. Whitman*, No. 2:19-cv-129, 2020 WL 5250461, at *4 (S.D. Ohio Sept. 3, 2020) (emphasis added) (quoting *Wilkins*, 559 U.S. at 34). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell*, 759 F.3d at 580-81 (citing

9

*Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* at 581 (internal quotations omitted) (quoting *Hudson*, 503 U.S. at 9). "[T]he key inquiry is whether the force was objectively unreasonable in the circumstances." *Bullocks v. Hale*, 478 F. Supp. 3d 639, 647 (S.D. Ohio 2020), *aff'd*, No. 20-3428, 2021 WL 1578198 (6th Cir. Mar. 1, 2021).

**IV.  Analysis**

Defendant Gifford is entitled to summary judgment on plaintiff's Eighth Amendment excessive force claim as a matter of law.  Plaintiff has not produced evidence to show there is a genuine factual dispute as to whether Gifford violated plaintiff's Eighth Amendment rights. Gifford's uses of force were reasonable under the circumstances to gain control over a recalcitrant prisoner who was actively resisting direct orders to return to his cell.

The undisputed evidence shows that the force used by Gifford occurred in response to plaintiff's repeated failure to obey the direct orders of Gifford for plaintiff to return to his cell. Specifically, the video recording demonstrates that Gifford was escorting plaintiff back to his own cell when plaintiff kicked a tray that was on the ground and continued walking past the opening to his cell. (Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:45:58-7:46:02).  Gifford placed his hands on plaintiff's arms in an attempt to escort him into his assigned cell. (*Id*. at 7:46:02-7:46:03).  The video shows plaintiff turning toward Gifford, then start to pull away.  Gifford attempts to place plaintiff against the wall while plaintiff continues to struggle.  Gifford loses his hold on plaintiff, steps away, and deploys a shot of OC spray at plaintiff.

There is no dispute that plaintiff actively resisted Gifford's direct orders to return to his cell. (*Id*. at 7:46:02-7:46:07; Doc. 44-4, Exh. D Gifford Decl., ¶¶ 14-15). Plaintiff testified:

> Q. So explain to me what you mean by you acted out? What did you do?
> A. I acted out. I refused to go in the cell. When he [Gifford] tried to put me in the cell, I refused to go and I asked for a white shirt.
> Q. So you actively resisted?
> A. Right. But that didn't give him [Gifford] no reason to assault me because I refused, you know. He could have escorted me to the shower, locked me in the shower, white shirt would have came.
> * * *
> Q. He gave you a direct order and you disobeyed that?
> A. Right.

(Doc. 40-1, Pltf. Depo. at PAGEID 173-74). Plaintiff also testified: "I did everything that I could not to go in the cell" (*Id*. at PAGEID 188), and "I did what I could not to go in the cell. And that even pissed him [Gifford] off more." (*Id*. at PAGEID 190).

There is also no dispute of fact that Gifford's use of physical force in attempting to gain control over plaintiff and his use of OC spray was reasonable under the circumstances. It was only *after* plaintiff kicked the tray, walked past his cell, refused Gifford's orders, and actively resisted that Gifford used physical force and OC spray to gain control over plaintiff. *See Jennings*, 93 F. App'x at 725 ("The videotape squarely demonstrates that [the plaintiff] disobeyed repeated direct orders prior to the use of pepper spray.").[6] By his own admission, plaintiff physically resisted entering his cell. When Gifford was unable to physically place and secure plaintiff against the wall, he then deployed OC spray to gain plaintiff's compliance. Courts have found the tailored use of chemical agents objectively reasonable in circumstances involving threatening or aggressive behavior. *See, e.g., Roberson*, 770 F.3d at 406 ("the use of . .

---

[6] Plaintiff's allegations in his verified complaint, and testimony contained in his deposition, that he was immediately and instantly sprayed with OC after he kicked the tray on the ground (Doc. 40-1, Pltf. Depo. at PAGEID 189, 197, 203; *see* Doc. 10 at PAGEID 77), is clearly refuted by the video evidence such that no reasonable jury could believe it. *Scott*, 550 U.S. at 380. The video of the incident demonstrates that ten seconds elapsed between plaintiff kicking the tray and Gifford's use of OC spray. (Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:45:58-7:46:08).

. chemical agents *against recalcitrant prisoners* d[oes] not violate the Eighth Amendment") (emphasis added) (internal quotation marks and citation omitted); *Thomas v. Greene*, 201 F.3d 441 (6th Cir. 1999) (Table) (soaking a plaintiff's back side with mace was objectively reasonable where the plaintiff "was threatening and uncooperative throughout the [use of force] incident[.]"). *See also Jeter v. Ohio Dep't of Rehab. & Corr.*, No. 1:17-cv-756, 2019 WL 5066851, at *6 (S.D. Ohio Oct. 9, 2019), *report and recommendation adopted*, 2020 WL 633300 (S.D. Ohio Feb. 11, 2020) ("Multiple courts including the Sixth Circuit repeatedly have held that a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order.") (collecting cases). Plaintiff has not submitted evidence sufficient to create a genuine issue of material fact as to whether Gifford's use of physical force and first deployment of OC spray was objectively unreasonable.

Plaintiff also alleges that Gifford used excessive force when he placed him in a "chokehold" following Gifford's first deployment of OC spray. (Doc. 10 at PAGEID 77; *see also* Doc. 51 at PAGEID 358). Immediately following Gifford's use of OC spray, the video shows that plaintiff continued to be noncompliant with Gifford's orders to return to his cell. Plaintiff admitted that he "spazzed out" and "refused to do anything he [Gifford] told me to do. He told me to go in the cell. I refused to go in the cell. He tried to push me in the cell, force me in the cell, I refused to go, and then it turned into an assault." (Doc. 40-1, Pltf. Depo. at PAGEID 187). Gifford's declaration and the video evidence further establish that Gifford attempted to place plaintiff into his cell using an arm escort technique. Plaintiff actively resisted by placing his hands and knees on the cell doorway. Gifford continued to use various escort techniques to gain plaintiff's compliance. Plaintiff fell to the ground and landed on his knees. Gifford placed one hand on plaintiff's arm and attempted to lift plaintiff's upper body with his

12

other arm. Plaintiff continued to actively resist Gifford's attempts to place plaintiff into his cell. Gifford placed plaintiff against the cell bars, stepped back, and deployed a second short burst of OC spray.

Additional corrections officers arrived and assisted Gifford. Gifford grabbed plaintiff's arms from behind, but plaintiff continued to hold onto the bars and would not let go. Another corrections officer pried plaintiff's hands from the bars before plaintiff was eventually placed into his cell. (Doc. 44-1, Exh. A. SOCF K-2 61-80, 7:46:18-7:47:18). At no point in time does the videotape show Gifford using his baton. (*See* Doc. 44-4, Exh. D Gifford Decl., ¶ 18). Further, Gifford did not kick, hit, punch, or strike plaintiff in his efforts to gain plaintiff's compliance with his direct orders. In considering plaintiff's disruptive course of conduct, Gifford's restraining technique was reasonably "applied in a good faith effort to maintain or restore disciple" and not to "maliciously or sadistically cause harm." *Whitley*, 475 U.S. at 319. *See Williams*, 981 F.2d at 905 (holding, "in the prison context, good faith use of physical force may be necessary to maintain prison security and discipline[.]").

Plaintiff's deposition testimony corroborates Gifford's declaration and video evidence showing the force used by Gifford was in response to plaintiff's resistance. Plaintiff testified, "And when he [Gifford] sprayed me, he told me to get in the cell. I said, I ain't going in the cell unless I see a white shirt. He grabbed me, tried to force me in the cell. When he grabbed me, tried to force me in the cell, I did – I did everything that I could not to go in the cell." (Doc. 40-1, Pltf. Depo. at PAGEID 188). There is no genuine dispute of fact that the force used by Gifford was reasonable given plaintiff's admittedly recalcitrant actions and refusal to obey direct orders. *See Burfitt v. Erving*, No. 1:18-cv-260, 2019 WL 6481380, at *7 (S.D. Ohio Dec. 2, 2019), *report and recommendation adopted*, 2019 WL 7020383 (S.D. Ohio Dec. 20, 2019) ("The

13

undisputed evidence shows that plaintiff's injuries were the result of defendants' good faith efforts to maintain and restore discipline.").

Plaintiff has not introduced any evidence to counter the video and declarations showing that Gifford's use of force was reasonable. Accordingly, because plaintiff has failed to establish a genuine issue of fact as to whether Gifford used excessive force during the February 20, 2017 incident at SOCF, summary judgment should be granted in favor of Gifford on plaintiff's Eighth Amendment excessive force claim.

## V. Conclusion

The undisputed evidence shows that Gifford did not violate plaintiff's Eighth Amendment rights. Gifford is therefore entitled to summary judgment on plaintiff's claim against him.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendant's motion for summary judgment (Doc. 44) be **DENIED** as moot, and defendant's amended motion for summary judgment (Doc. 46) be **GRANTED**.

2. Plaintiff's motion for summary judgment (Doc. 51) be **DENIED**.

3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Court Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 7/19/2021

Karen L. Litkovitz
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAYMOND HAYWOOD,
    Plaintiff,

vs.

NICHOLAS GIFFORD,
    Defendant.

Case No. 1:17-cv-398
Cole, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation within **FOURTEEN (14) DAYS** after being served with a copy thereof.  This period may be extended further by the Court on timely motion by either side for an extension of time.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).